RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0379p.06

**FOR YOUR INFORMATION**

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

v.

DANNY BURGIN,

    *Defendant-Appellant.*

No. 03-3577

CR-1-02-88

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00088—Sandra S. Beckwith, Chief District Judge.

Argued: June 16, 2004

Decided and Filed: November 3, 2004

Before: KRUPANSKY and COLE, Circuit Judges; COOK, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Jason M. Cohen, KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio, for Appellant. Amul R. Thapar, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Jason M. Cohen, KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio, for Appellant. Amul R. Thapar, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

    COOK, District Judge. The Appellant, Danny Burgin, appeals the conviction and sentence that were imposed upon him following the entry of his plea of guilt to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and violating 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA). A violation of § 922(g)(1) carries a statutory maximum sentence of ten years. However, he was sentenced by the district court to a term of imprisonment of 180 months (fifteen years), pursuant to the statutory minimum sentence of the ACCA. Although Burgin concedes that he violated § 922(g)(1), and has three prior convictions for violent felonies, he contends in this appeal that the determination of whether his prior felony convictions were "committed on occasions different from one another" is a factual determination, i.e., an element of the offense, which the United States (the Government) was required to

---

[*] The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

1

plead in the Indictment, submit to a jury and prove beyond a reasonable doubt. In Burgin's view, the Government's failure to include this element in the Indictment constitutes reversible error under the standard that was established by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

I

This case arises out of a series of events that occurred in May 2002. During a four day period of May 13th through May 17th in 2002, Burgin agreed to supply a confidential informant with five ounces of cocaine. On May 17th, the informant entered Burgin's residence and gave him $1,000 in marked currency in exchange for 27.66 grams of cocaine. Soon thereafter, Burgin, after leaving his home in a vehicle, was stopped by law enforcement officers in a marked police car. The officers arrested Burgin, advised him of his *Miranda* rights, and discovered that he had possession of $950 in marked currency and 110.67 grams of powder cocaine.

During his interrogation at the police station, Burgin disclosed to the officers that he also kept a gun in a closet at his home. After obtaining a search warrant, the officers conducted a search of his home where they uncovered a .38 caliber Rossi revolver, 228.51 grams of powder cocaine, 17.41 grams of cocaine base (crack cocaine), and 6.67 grams of marijuana.

On July 10, 2002, a grand jury indicted Burgin on four counts, including alleged violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). On November 20, 2002, Burgin entered into an agreement with the Government, in which he agreed to plead guilty to Counts One and Three of the Indictment in exchange for the dismissal of Counts Two and Four. The statement of facts attached to the plea agreement stated:

> before May 17, 2002, the defendant was convicted of three violent felonies as defined under Title 18, United States Code, Section 924(e). Those violent felonies are as follows: (1) Aggravated Armed Robbery in Case Number 00750331-B-01 in the Hamilton County Court of Common Pleas; (2) Aggravated Robbery in Case Number 77-CR-081B in the Portage County Court of Common Pleas; and (3) Aggravated Robbery in Case Number 77-CR-082B in the Portage County Court of Common Pleas.

J.A. at 24-25.

The Government also filed a pleading in which it set forth the elements of the offenses that had been charged against Burgin in Counts One and Three of the Indictment. This document outlined the elements of 18 U.S.C. §§ 922(g)(1) and 924(e), and included a statement "that the defendant had three previous convictions for a violent felony or a serious drug offense."

During a plea hearing before the district court on November 22, 2002, Kyle Ingram, a Specialist in the Cincinnati Police Department's Regional Narcotics Unit, testified that Burgin had been "convicted of three violent felonies as defined under Title 18, United States Code, Section 924(c)." *Id*. at 88-89. He then enumerated the same three convictions that had been set forth as part of the plea agreement. Thereafter, the Court, after summarizing Ingram's statements, asked Burgin whether these representations were correct. Burgin replied, "yes." *Id*. at 90. Burgin was also asked if there was "anything that [Ingram had] said or anything that [the Court had] said in the summary that is in any fashion incorrect?" Burgin responded, "no, everything's correct." *Id*.

Prior to the sentencing hearing, Burgin received a Presentence Report, which discussed two of his prior convictions, both of which had been prosecuted in Portage County, Ohio, as follows

> The Indictment for Case Number 77CR0081(B) originally charged Reginald Meyers, Gregory Farmer, Marshall Motley, Thomas Harrison, and the defendant with Aggravated Robbery, Kidnaping, Carrying a Concealed Weapon, and Petty Theft. The Indictment

alleged that the defendant and his co-defendants kidnaped John Caplan and Linda Dipon while in possession of a .22 caliber pistol and stole a stereo record player on March 31, 1977. The Indictment in Case Number 77CR0082(B) charged Reginald Meyers and the defendant with Aggravated Robbery, Kidnaping, Felonious Assault, and Grand Theft. It alleged that Meyers and Burgin forcefully removed John Caplan, Jeff Lauter and Linda Flannigan from the place where they were found (inflicting serious physical harm to John Caplan) and stole watches, clothes, and rings valued at over $150. Burgin was sentenced to 7 to 25 years imprisonment on each count to be served concurrently.

*Id.* at 55. Burgin objected to the inclusion of this paragraph in the Presentence Report, contending that his two Portage County convictions should have been treated as one course of conduct. The Probation Officer recorded Burgin's objection in the Presentence Report, and stated "the defendant notes that the crimes in Portage County, Ohio occurred within days of each other. They were consolidated for sentencing, and the defendant was sentenced to concurrent 7 to 25 year terms of imprisonment." *Id.* at 66. The Probation Officer also wrote that the "defendant maintains the matters were obviously indicted together, as the case numbers are sequential. One sentence was served, which implies that the Trial Court treated them as two acts with a single animus or as one course of conduct." *Id.*

At the sentencing hearing on April 7, 2003, the district court acknowledged Burgin's objection, saying, in part, that he "argues that the Aggravated Armed Robbery conviction[s] should be treated as one." *Id.* at 28. However, the Court overruled his objection and concluded that he had "pleaded guilty to [violating] those two statutes [(namely, §§ 922(g) and 924(e))] and he cannot avoid the mandatory minimum sentence that is the consequence." *Id.* at 35.

II

The parties do not agree upon the standard of review that should be applied by this Court. Burgin argues that his *Apprendi* challenge was properly preserved in the district court and should be subjected to a de novo standard of review. On the other hand, the Government contends that Burgin's failure to object to his sentence on constitutional grounds compels an appellate review for plain error of the sentence.

This Circuit has recently determined that an "*Apprendi* challenge will be reviewed for plain error where, although the defendants objected in the district court to the quantity of drugs attributed to them for sentencing, they failed to raise in the district court objections based on *Apprendi* or *Jones v. United States.*" *United States v. Lopez*, 309 F.3d 966, 969 (6th Cir. 2002). In support of his position, Burgin cites *United States v. Stines*, 313 F.3d 912, 917 (6th Cir. 2002), in which we relied upon *United States v. Strayhorn*, 250 F.3d at 462, 467 (6th Cir.2001), and held that "[i]n order to preserve an *Apprendi* challenge, the defendants need not 'utter the words "due process"' as long as it is well known that they dispute the district court's factual findings as to drug quantity." However, in deciding *Lopez*, we distinguished *Strayhorn* on the ground that *Apprendi* had not been decided when the *Strayhorn* defendants were tried and sentenced. *See Lopez*, 309 F.3d at 969. Similarly, in *Stines*, we noted that "[i]t would have been impossible for the defendants to have intentionally relinquished or abandoned their *Apprendi* based claims considering *Apprendi* was decided after they were sentenced." *Stines*, 313 F.3d at 917. Unlike the defendants in *Strayhorn* and *Stines*, the sentence was imposed upon Burgin on April 7, 2003 after *Apprendi* had been decided. Burgin cannot assert that *Apprendi* was not the law at the time of this sentencing. As such, his reliance upon *Stines* is misplaced.

Therefore, we must now review the decision of the district court for plain error. *See* Fed. R. Civ. P. 52(b). Under the plain error test, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631-632 (2002) (internal citations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

III

The Government initially argues that Burgin waived his constitutional right to present a claim under *Apprendi* when, after pleading guilty, there was an admission by him that he had committed three violent felonies, as defined by 18 U.S.C. § 924(e). In making this argument, the Government relies upon (1) a listing of all the elements of the offense that it had given to Burgin, (2) his guilty plea form, and (3) an admission by him that he had been previously convicted of three felonies, as defined under the ACCA. In opposition to the Government's argument, Burgin contends that his guilty plea would be adversely affected by a waiver only if he had pled guilty to an indictment that had properly charged him with all of the elements of the offense. However, he submits that the Indictment was not only legally deficient, in that it was devoid of each and every requisite element of § 924(e), but the district court failed to identify all of the essential elements in the statute during the plea hearing.

In deciding whether Burgin has affected a waiver that would preclude his appeal, we must clarify another issue that he has raised in this Court. While conceding guilt to three violent criminal offenses, it is Burgin's contention that he never admitted that these felonies were committed on different occasions.

In the Addendum to the Presentence Report, the Probation Officer wrote

> the defendant notes that the crimes in Portage County, Ohio occurred within days of each other. They were consolidated for sentencing, and the defendant was sentenced to concurrent 7 to 25 year terms of imprisonment. The defendant maintains the matters were obviously indicted together, as the case numbers are sequential. One sentence was served, which implies that the Trial Court treated them as two acts with a single animus or as one course of conduct. The defendant believes he should not be subject to the mandatory 15 year sentences [sic].

J.A. at 66.

In support of its contention that Burgin waived his right to appeal, the Government relies upon *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002), in which the defendant was charged with one count of conspiracy to manufacture marijuana, one count of possession with intent to distribute marijuana, and two counts of manufacturing marijuana, in violation of 21 U.S.C. §§ 841 and 846. Although he initially pled not guilty, Leachman changed his plea to guilty on all four counts, including the second count, which charged him with possessing 1,366 marijuana plants. *Id.* at 379-380. The penalty section of § 841 provided that whenever there is an adjudication of guilt in a case involving "1000 or more marijuana plants . . . such person shall be sentenced to a term of imprisonment which may not be less than ten years or more than life." *Id.* at 380. The district court imposed a sentence of 120 months imprisonment, "based on the 1366 marijuana plants charged in the indictment." *Id.* On appeal, Leachman claimed that this sentence was unconstitutional under *Apprendi* because his mandatory minimum sentencing range had been determined by an amount of drugs not submitted to a jury or proved beyond a reasonable doubt. *Id.* at 378.

We rejected Leachman's argument for two reasons. First, we held that *Apprendi* applies only to those factors that extend a sentence beyond the statutory maximum, and not to those that increase the statutory mandatory minimum. *Id.* Second, we found that Leachman had "waived his rights to a jury and to proof beyond a reasonable doubt, in regard to the amount of drugs . . . first, by pleading guilty to an indictment properly charging the amount of drugs as an element of his offense; and second, by expressly agreeing to be bound by the judge's determination of the amount." *Id.*

Here, the Government's claim that Burgin admitted his guilt to having been convicted of three previous violent felonies, "as defined" under the ACCA, cannot be construed as an admission that the three

felonies were "committed on occasions different from one another." The words "as defined," as used in this context, appear to modify the words "violent felony" as found in 18 U.S.C. § 924 (e)(2)(B).[1]

The Indictment did not specifically indicate that Burgin's three prior convictions were "committed on occasions different from one another." Furthermore, a guilty plea should be construed as an admission to only those facts that have been properly charged in the indictment.[2] *United States v. Parker*, 292 F.2d 2, 3 (6th Cir. 1961) ("A plea of guilty by a prisoner in open court . . . admits all facts alleged in the indictment"). Similarly, the pleading that lists the elements of the offense, and on which the Government relies, also fails to allege that Burgin's three prior felony convictions were "committed on occasions different from one another."

In summary, the record does not support the Government's argument that he admitted that his prior convictions were committed on occasions different from one another. As such, we conclude that Burgin has not waived his right to appeal.

IV

In this case, Burgin was sentenced after having pled guilty to 18 U.S.C. §§ 922(g) and the ACCA. A violation of the ACCA requires the imposition of 15 years of imprisonment for any person who, in relevant part, "violates section 922(g) . . . and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another." 18 U.S.C. § 924(e). Burgin argues that the requirement that his three prior convictions were committed on occasions different from one another constitutes a fact, which the Government was required to plead in the Indictment, submit to a jury, and prove beyond a reasonable doubt. According to him, the treatment of this "different occasions" fact is controlled by *Apprendi*, in which the Supreme Court held that "[o]ther than the fact of a prior criminal conviction, any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).

Thus, the issue before the Court is whether this "different occasions" language is a fact, "other than the fact of a prior conviction," which is subject to the protections outlined in *Apprendi*. The exception in *Apprendi* for the fact of a prior conviction dates back to the decision by the Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 225 (1998). There, the Court held that subsection (b)(2) of 8 U.S.C. § 1326 did not define a separate crime. Rather, it constituted a penalty provision, pursuant to which a court could increase a sentence of imprisonment on the basis of an earlier criminal conviction. Subsection (a) of § 1326 prohibits any deported alien from reentering the United States and provides, in pertinent part, that any alien who has been deported and thereafter enters the United States shall be fined, or imprisoned not more than two years, or both. Subsection (b) of this statute sets forth, in relevant part,

> Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

---

[1] Section 924(e)(2)(B) of Title 18 of the United States Code provides, in relevant part, that

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or . . . if committed by an adult, that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

[2] The *Leachman* Court also noted that a defendant may waive his rights via a guilty plea despite an improperly charged indictment if the district court sentenced him above the mandatory minimum. A sentence above the mandatory minimum indicates that the judge did not consider the statutory minimum restriction as a limitation on his discretion. Thus, the absence of the fact in the indictment was not relevant to the sentence imposed. *See id.* (citing *United States v. Lucas*, 282 F.3d 414 (6th Cir. 2002), and *United States v. Garcia*, 268 F.3d 407 (6th Cir. 2001)).

. . .

> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

8 U.S.C. § 1326 (b)(2). In determining that Congress only "intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense," 523 U.S. at 235, the Supreme Court noted, among other things, that "the relevant statutory subject matter is recidivism," *id.* at 230, and recidivism "- the prior commission of a serious crime - is as typical a sentencing factor as one might imagine," *id.* Recidivism, the Court said, is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243. Thus, "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only.'" *Id.* at 244. (quoting *Graham v. West Virginia*, 224 U.S. 616, 629 (1912)).

Two years later, the Supreme Court in *Apprendi* addressed the constitutionality of a New Jersey hate crime enhancement statute, which allowed a jury to convict a defendant of a second-degree offense if it found that he had unlawfully possessed a prohibited weapon. This challenged statute authorized the imposition of a punishment identical to first degree criminal offenses if the judge found the defendant to have been in the possession of a prohibited weapon for a biased purpose (e.g., racial animus). In striking down the New Jersey law, the Supreme Court signaled a retreat from classifying the facts in a criminal statute, as it had in *Almendarez-Torres*, as either "elements" or "sentencing factors:"

> [I]t does not matter whether the required finding [in the New Jersey statute] is characterized as one of intent or of motive, because "labels do not afford an acceptable answer." That point applies as well to the constitutionally novel and elusive distinction between "elements" and "sentencing factors." Despite what appears to us the clear "elemental" nature of the factor here, the relevant inquiry is one not of form, but of effect.

*Id.* at 494 (internal citations omitted). Thus, the Court determined that the central question was "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* "[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* n.19.

*Apprendi* specifically limited the holding in *Almendarez-Torres* to the unique facts in that case. The Court initially noted that the "judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." 530 U.S. at 483 n.10. *Almendarez-Torres* "represents at best an exceptional departure," *id.* at 487, from this historic practice, and should be treated as a "narrow exception," *id.* at 490. The Supreme Court declared that its "conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime.'" *Id.* at 488. Almendarez-Torres had pled guilty to "three earlier convictions for aggravated felonies--all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own." *Id.* Thus, the Court concluded that "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Id.*

In the case before this Court, we must decide whether the requirement of the ACCA, that a defendant's prior felony convictions must have been "committed on occasions different from one another," constitutes a fact that pursuant to *Apprendi* must be pled in an indictment, submitted to a jury and proved

beyond a reasonable doubt or falls within the exception for a prior conviction. This case presents an issue of first impression in this Circuit. *But see, infra, United States v. Becerra-Garcia*, 28 Fed. Appx. 381 (6th. Cir. 2002) (unpublished). Three other Circuits have considered an *Apprendi* challenge to the ACCA, all of which have held that § 924(e) is a sentencing factor that falls within the exception for a prior conviction.

In *United States v. Santiago*, 268 F.3d 151 (2d Cir. 2001), *cert. denied*, 535 U.S. 1070 (2002), the Second Circuit rejected a defendant's claim that "*Apprendi*'s recidivism exception does not encompass the issue of whether prior convictions arose from offenses 'committed on occasions different from one another.'" *Id.* at 155. In so doing, the Second Circuit reasoned that the *separateness* of prior convictions could not be significantly distinguished from the *existence* of those convictions. *See id.* at 156. The *Santiago* court found that the exception for the *fact of a prior conviction* "implicitly entails many subsidiary findings, not the least of which is that the defendant being sentenced is the *same* defendant who previously was convicted of those prior offenses." *Id.* Thus, the Second Circuit concluded that "the separateness of the convictions is not a fact which is different in kind from the types of facts already left to the sentencing judge" by *Apprendi*. *Id.* In addition, *Santiago* (1) relied heavily on the special treatment of recidivism by the Supreme Court as a traditional factor to be considered by a court at sentencing, and (2) noted that requiring the government to prove facts involving prior convictions is, in general, far more likely to prejudice defendants because it would entail revealing these prior convictions to the jury. In sum, *Santiago* held that "§ 924(e)'s different occasions requirement falls safely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that *Apprendi* does not require different fact-finders and different burdens of proof for § 924(e)'s various requirements." *Id.* at 157.

In confronting a similar challenge to the different occasions language of § 924(e), the Seventh Circuit in *United States v. Morris*, 293 F.3d 1010 (7th Cir. 2002), *cert. denied*, 537 U.S. 987 (2002) adopted the rationale of *Santiago*, reasoning that "[t]he logic of . . . *Almendarez-Torres* applies to this [different occasions] aspect of the recidivism inquiry, which merely involves a determination of which prior convictions will be considered." *Id.* at 1012. *Morris* also noted that the ACCA was specifically cited in *Almendarez-Torres* "for the proposition that 'prior commission of a serious crime - is as typical a sentencing factor as one might imagine.'" *Id.* (quoting *Almendarez-Torres*, 523 U.S. at 230).

In *United States v. Campbell*, 270 F.3d 702 (8th Cir. 2001), *cert. denied*, 535 U.S. 946 (2002), the defendant, who had been accused of having violated § 924(e)(1), argued that *Apprendi* requires a jury to determine whether his prior offenses constituted violent felonies or serious drug offenses. The Eighth Circuit rejected Campbell's argument, and held that the determination of whether his prior convictions constituted violent felonies or serious drug offenses fell within the recidivism exception for "the fact of a prior conviction." *See id.* at 708.

In *United States v. Becerra-Garcia*, No. 99-6205, 28 Fed. Appx. 381, 2002 WL 22038, (6th. Cir. Jan. 2, 2002) (unpublished), the defendant was convicted of an illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). He received a sentence above the two year statutory maximum because the district court determined that his earlier deportation was subsequent to a conviction for an aggravated felony under § 3126(b)(2), which subjected him to a maximum term of imprisonment of twenty years. In appealing his conviction, the defendant argued "that the type or nature of the prior conviction, that is, whether the offense was a felony or an aggravated felony, entails issues beyond the scope of the 'fact' of a prior conviction." *Id.* at 384. Relying in part upon *Santiago* and *Campbell*, this Court held that "the district court's authority to determine the 'fact of a prior conviction' was broad enough . . . to include the factual determination that the defendant's prior conviction was for an aggravated felony." *Id.* at 385.

In this case, Burgin argues that the fact of a prior conviction "is unique because it cannot become a fact until after it has been 'established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.'" Appellant's Final Br. at 10 (citing *Apprendi*, 530 U.S. at 488). Thus, he says that the

determination by the trial court that his prior felonies were committed on different occasions fails to satisfy the fundamental guarantees of the Constitution.

We find these arguments unpersuasive. The principal issue before this Court is whether the "different occasions" requirement of § 924(e) falls within the exception for a prior conviction, or constitutes a fact other than the fact of a prior conviction that must be pled in an indictment, submitted to a jury, and proved beyond a reasonable doubt. In the usual case, we expect that a district court's determination that a defendant has a record of prior convictions will be accompanied by the judge's determination of when those convictions were entered. Therefore, we conclude that the determinations by a district court that prior felony convictions exist and were committed on different occasions, are so intimately related that the "different occasions" requirement of § 924(e) sufficiently comes within the exception in *Apprendi* for a prior conviction. Thus, it is our determination that this issue need not be pled in an indictment, submitted to a jury, and proved beyond a reasonable doubt. The "different occasions" language involves the issue of recidivism, "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Apprendi*, 530 U.S. at 488. Like the fact of a prior conviction, it is not a fact that pertains to the commission of the offense for which the defendant is presently charged. Thus, the "different occasions" requirement of § 924(e) cannot be significantly distinguished from "the fact of a prior conviction."

Burgin also implies that *Almendarez-Torres* may no longer be good law because the majority in *Apprendi* opined that "it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivism issue were contested," 530 U.S. at 489. Justice Clarence Thomas, who had agreed with the five justice majority opinion in *Almendarez-Torres*, indicated that he no longer agreed with the reasoning underlying that decision when he stated in his concurring opinion in *Apprendi* that "one of the chief errors of *Almendarez-Torres* - an error to which I succumbed - was to attempt to discern whether a particular fact is traditionally (or typically) a basis for a sentencing court to increase an offender's sentence. *Id.* at 520. However, a full reading of the applicable language of *Apprendi* reveals that the Supreme Court clearly reaffirmed *Almendarez-Torres*:

> Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, *Apprendi* does not contest the decision's validity and *we need not revisit it for purposes of our decision today to treat the case as a narrow exception* to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.

530 U.S. at 489-490 (emphasis added).

Finally, Burgin suggests that even if some lessor standard applies to the "different occasions" requirement, the district court never made any "finding" or "legal conclusion" that his prior felonies had been "committed on occasions different from one another." However, the applicable facts surrounding each of the felony convictions were provided to the district court by the Probation Officer in his Presentence Investigation Report. Finally, Burgin contends that some repetition of the elements of the offense is necessary for any defendant and that the failure of the district court to specifically identify them is erroneous. However, inasmuch as the Government was not required to charge that his prior convictions were "committed on occasions different from one another" in the Indictment, the district court was not required to treat this factor as an element of the offense charged.

Accordingly, for the reasons that have been set forth above, we AFFIRM the conviction and sentence of the district court.